**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN Z., | Civil Action No. 21-02773 (SDW) |
| Plaintiff, | **OPINION** |
| v. | March 28, 2022 |
| COMMISSIONER OF SOCIAL SECURITY, |  |
| Defendant. |  |

**WIGENTON**, District Judge.

Before this Court is Plaintiff John Z.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Jack Russak's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act").  This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that his legal determinations are correct.  Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.     **PROCEDURAL AND FACTUAL HISTORY**

   A.     **Procedural History**

   Plaintiff filed for DIB on January 30, 2014, alleging disability due to open heart surgery, bipolar disorder, and depression.  (*See* D.E. 7 (Administrative Record ("R.") at 125.)  The state agency responsible for disability determinations denied Plaintiff's claim at the initial and reconsideration levels.  (R. 137–51.)  Subsequently, Plaintiff requested a hearing before an ALJ.  (R. 163–64.)  Plaintiff received a hearing on December 13, 2016, at which Plaintiff, represented by counsel, testified.  (R. 85–124.)  After Plaintiff expressed concerns to the court about a psychiatric evaluation he had received, the court conducted a second hearing on May 31, 2017 at which the court addressed Plaintiff's concerns and ordered an additional psychiatric evaluation.  (R. 78–84.)  On July 17, 2017, ALJ Russak determined that Plaintiff was not disabled.  (R. 43–61.)  On April 15, 2019, the Appeals Council denied Plaintiff's request for review.  (R. 33–35.)  Plaintiff requested an additional review by the Appeals Council, and on June 15, 2020, the Appeals Council again denied Plaintiff's request for review.  (R. 12–17.)  Plaintiff filed the instant appeal in this Court, and the parties completed timely briefing.  (*See* D.E. 1, 11, 12, 13.)

   B.     **Factual History**

   Plaintiff is sixty-one years old and has a Bachelor's degree in Electrical Engineering and a Master's Degree in Engineering Management.  (R. 94, 99, 369.)  He previously worked as a systems analyst, which is skilled, sedentary work.  (R. 115–117.)  The following is a summary of the relevant medical evidence in the record.

<u>Mitral Valve Repair</u>

   In 2010, Plaintiff underwent successful surgery to repair mitral valve prolapse and regurgitation.  (R. 511–13.)  Three years after the surgery, physician Robert J. Leon, M.D.

evaluated Plaintiff and noted the "left atrium [was] enlarged in size" and the "right atrium [was] normal in size," but there were also "no regional left ventricular wall motion abnormalities" and "no mitral valve regurgitation present." (R. 513.) Dr. Leon reported "no change in [Plaintiff's] functional capacity" and "no new symptoms," and noted that Plaintiff was "exercising on [his] bicycle" and "doing well." (R. 534.) After a consultative examination in October 2014, Samuel Wilchfort, M.D. observed that Plaintiff was "not having any cardiac symptoms." (R. 588.) Between December 2015 and November 2016 Plaintiff saw cardiologist Sreeram Grandhi, M.D. and reported having dyspnea when climbing stairs and chest pain. (R. 655–65.) Dr. Grandhi evaluated Plaintiff and ordered a transthoracic echocardiogram. (663–65.) The echocardiogram revealed normal structure and normal functioning of Plaintiff's mitral valve, mild regurgitation associated with his tricuspid valve, and moderate regurgitation associated with his pulmonic valve. (R. 664.) Dr. Grandhi concluded that Plaintiff had a "[n]ormal functioning" mitral valve. (R. 662.)

<u>Bipolar Disorder</u>

Psychiatrist Emily Deans, M.D. first evaluated Plaintiff in December 2013. (R. 596–98.) At the time, Plaintiff reported having a six-year history of depression, low mood, anxiety, agitation, mood cycling, and lack of motivation. (*Id.*) Dr. Deans noted that Plaintiff displayed goal-directed thought processes with "no disorganization or tangentiality" and exhibited "[n]o paranoia or delusions." (*Id.*) To alleviate his symptoms, Plaintiff continued treatment with Dr. Deans, used a light-therapy device, and tried various medications, such as Emsam, Seroquel, Wellbutrin, Clonidine, and different benzodiazepine medications, with varying results. (*See* R. 596–620, 706–07.) Throughout Plaintiff's treatment, Dr. Deans diagnosed him with "unspecified bipolar disorder"

and noted that he had a Global Assessment of Functioning ("GAF") Axis V rating ranging from 55 to 65, which reflected a moderate range of functioning.  (R. 596–620.)

In May 2014, psychologist Gerard A. Figurelli, Ph.D., performed a mental status evaluation of Plaintiff.  (R. 566.)  He noted that during the evaluation, Plaintiff's "speech remained even[-]paced, clear[,] and sufficiently intelligible for the examiner to understand."  (R. 567.)  Dr. Figurelli observed that Plaintiff did not experience any "difficulty in his attempts to adequately comprehend or remain relevantly focused," "was fully oriented to person, place and time," and "manifested no [] evidence of active psychotic disturbance."  (*Id.*)  With respect to adaptation, Dr. Figurelli confirmed that Plaintiff "is independently functional in various areas of personal care and basic self-help skills and manages his own money"; he can also cook, clean, do laundry, shop, and use a computer.  (R. 568–69.)  Dr. Figurelli concluded that Plaintiff's documented mental status is consistent with a diagnosis of recurring major depression with anxiety, and "[b]orderline [p]ersonality [f]eatures."  (*Id.*)

While Plaintiff's mood was inconsistent throughout his treatment with Dr. Deans, she noted that he consistently displayed cooperative behavior and alertness in sessions that occurred between December 2015 and October 2016.  (R. 627–37.)  Dr. Deans completed a mental functional capacity assessment of Plaintiff in November 2016 concluded that Plaintiff's limitations rendered him unable to work on a sustained basis for twenty percent of the time.  (R. 668–72.)  Between November 2016 and April 2017, Dr. Deans observed that Plaintiff experienced "mild psychomotor agitation," but remained cooperative, alert, and oriented, without disorganization or tangentiality.  (R. 706–13.)  Dr. Deans completed another medical source statement in April 2017 (more than two years and three months after Plaintiff's insured status expired) and concluded that Plaintiff's mental impairment(s) met the requirements of a listed impairment.  (R. 714–21.)

In June of 2017, psychologist Sharon R. Kahn, Ph.D. evaluated Plaintiff's claim.  (R. 722–30.)  Dr. Kahn found "no significant deficits" in Plaintiff's "immediate recall, delayed recall, concentration, or structured tasks."  (R. 722.)  Additionally, Dr. Kahn noted that Plaintiff had no restrictions performing daily living activities; moderate difficulty maintaining social functioning; no difficulties maintaining concentration, persistence, or pace; and no repeated episodes of decompensation.  (R. 726.)  Dr. Kahn opined that the evidence did not establish the presence of the "C" criteria and Plaintiff's mental complaints did not rise to the level of a listed impairment. (R. 727, 729–30.)

### C.    Hearing Testimony

At the initial administrative hearing on December 13, 2016, Plaintiff was represented by counsel. (R. 87–88.)  Louis Szollosy, a vocational expert ("VE Szollosy"), also appeared and testified that Plaintiff's past relevant work included positions as a "financial analyst, accounts receivable manager, as well as controller."  (R. 115.)  These positions are classified as sedentary exertion.  (*Id.*)  Mr. Szollosy considered Plaintiff's limitations and opined that jobs are available in the labor market, including positions as a packer, an inserter, or a produce weigher, each of which is performed with light exertion.  (R. 118–19.)  Mr. Szollosy further opined that positions as a marker, a hand packager, and a laundry laborer are available, each of which is performed with medium exertion.  (R. 119–20.)

At Plaintiff's request, ALJ Russak held a subsequent hearing on May 31, 2017, at which Plaintiff was again represented by counsel.  (R. 79–80.)  The court addressed Plaintiff's concern about a consultative psychological evaluation the court had received.  (R. 80–81.)  The ALJ noted

that he would send Plaintiff's records to a psychiatrist or psychologist for additional review prior to making his decision.  (R. 80–83.)

## II.   <u>LEGAL STANDARD</u>

### A.   **Standard of Review**

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision."  *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give

substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he [or she] accepts and which he [or she] rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B.      The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  A claimant will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the claimant "not only unable to do his [or her] previous work but [unable], considering his [or her] age, education, and work experience, [to] engage in any kind of substantial gainful work [that] exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step, sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76, 416.920(a)(4)(i).  SGA

is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments

does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant can perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

III.   **DISCUSSION**

   A.   **The ALJ's Decision**

On July 17, 2017, ALJ Russak issued a decision concluding that Plaintiff was not disabled from December 31, 2008, through December 31, 2014, the date he was last insured. (R. 43–55.) At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity" throughout the aforementioned time period. (R. 48.)

At step two, the ALJ found that Plaintiff "had the following severe impairments: status post mitral valve repair, bipolar disorder, and obesity." (*Id.*)

At step three, ALJ Russak concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 48–49.) Specifically, the ALJ found that Plaintiff's cardiac impairment did not satisfy the criteria of the listings in Section 4.00. (R. 49 (*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00.).) Additionally, the court determined that "the severity of [Plaintiff's] mental impairment did not meet or medically equal the criteria of listing 12.04." (*Id.*) To meet this listing, a claimant must prove that he or she meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Paragraph A requires that claimant have a "[d]epressive disorder, characterized by five or more" enumerated criteria, or "[bi]polar disorder, characterized by three or more" enumerated criteria. *See id.* § 12.04(A)(1)– (2). Paragraph B requires that a claimant have

> [e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :
>
> 1. Understand, remember, or apply information . . . .
> 2. Interact with others . . . .
> 3. Concentrate, persist, or maintain pace . . . .
> 4. Adapt or manage oneself . . . .

*Id.* at § 12.04(B)(1)–(4). Paragraph C requires that a claimant's "mental disorder in this listing category is 'serious and persistent'" and that the claimant have medical documentation that the

disorder has existed over at least a two-year period, with evidence of ongoing mental health treatment "that diminishes the symptoms and signs of [the claimant's] mental disorder" and "marginal adjustment" in the claimant's ability and "minimal capacity to adapt to changes in . . . environment or to demands that are not already part of . . . daily life." *Id.* at § 12.04(C)(1)–(2).

Based on Plaintiff's medical records, ALJ Russak found that Plaintiff's mental impairments did not result "in at least two 'marked' limitations or one 'extreme' limitation"; thus the paragraph B criteria were not satisfied. (R. 49–50.) ALJ Russak also found that the paragraph C criteria were not met because Plaintiff's treatment notes and hearing testimony did not evince "the existence of mental disorder over a period of at least two years with evidence of both" ongoing mental health treatment and "minimal capacity to adapt to changes" to his environment or "to demands that are not already part of daily life." (R. 50.)

At step four, the court found that someone with Plaintiff's RFC could "perform medium work," as defined in 20 C.F.R. 404.1567(c), with limitations such as avoiding working with moving machinery; avoiding certain environmental exposure; performing simple, routine tasks; working in a low-stress position with occasional judgment requirements; avoiding public interaction; and having occasional co-worker interaction.   (R. 50–51.)   In making this determination, the court considered Plaintiff's symptoms, discussed his mitral valve repair and normal function thereafter, and analyzed in detail his psychiatric treatment records.   (R. 51–53.) ALJ Russak concluded that while Plaintiff would be unable to perform his past relevant work, he "has no limitations with performance of simple or complex tasks." (R. 51–54.)

Finally, at step five, the ALJ considered VE Szollosy's testimony, noted Plaintiff's limitations, and contemplated Plaintiff's "age, education, work experience, and [RFC]." (R. 54–55.)   After factoring in those considerations, the court determined that because Plaintiff "was

capable of making a successful adjustment to other work" and "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Plaintiff was not disabled during the relevant period.  (*Id.*)

**B.      Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision.  (*See* D.E. 11 at 32.)  Plaintiff asserts that "the Commissioner improperly evaluated the medical evidence," and the ALJ erroneously determined that Plaintiff can perform medium work with limitations and did not give the VE an accurate portrayal of Plaintiff's impairments.  (*Id.* at 19, 25.)  This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that the Commissioner "improperly evaluated the medical evidence" and that the records show that Plaintiff's mental impairment did meet or equal the Listing 12.04 criteria.  (*Id.* at 19.)    Plaintiff specifically focuses on the ALJ's analysis of the medical records pertaining to his treatment for bipolar disorder and contends that the ALJ should have focused more on Dr. Deans' assessments, rather than considering the consultative psychologists' analyses. (R. 19–24.)

Plaintiff's argument is unavailing.  ALJ Russak thoughtfully considered Dr. Deans' assessments, the consultative assessments, and Dr. Kahn's assessment and elucidated cogent reasons for determining that Plaintiff did not meet or equal the Listing 12.04 criteria.  When evaluating a Plaintiff's claim, an ALJ considers the persuasiveness of medical opinions and "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."  20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5).  However, "[a]n ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that

determination is an administrative finding reserved to the Commissioner." *Gantt v. Comm'r Soc. Sec.*, 205 Fed. Appx. 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)).

Here, ALJ Russak carefully considered the record in light of Dr. Deans' assessments and afforded her opinion little weight because the assessments "appear inconsistent with the claimant's documented improved mood with treatment, his relatively infrequent psychiatric treatment, and his reported activities." (R. 53.)  The court also considered Dr. Figurelli's 2014 examination of Plaintiff and found that Plaintiff's symptoms were "only moderate." (R. 52–53; 565–69.)  The ALJ addressed each of the four areas of mental functioning as required under C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 and provided adequate rationales to explain why he found that Plaintiff's mental impairments did not result in more than moderate limitations. (R. 53.)

Furthermore, Dr. Deans' assessment occurred more than two years after Plaintiff's insurance expired and had limited relevance to the time period at issue in this claim.  Plaintiff "bears the burden of establishing that he 'became disabled at some point between the onset date of disability and the date that [his] insured status expired.'" *Pearson v. Comm'r of Soc. Sec.*, 839 Fed. Appx. 684, 688 (3d Cir. 2020) (quoting *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014)). "While evidence generated after a claimant's date last insured can shed light on his condition during the insured period, that evidence does not necessarily compel the Commissioner to conclude that the claimant's condition during the insured period was as severe as it became after the date last insured*." Id.*  Here, Dr. Deans' medical assessments from 2016 and 2017 occurred well after Plaintiff's insured status expired and did not reflect meaningfully on the period at issue in the claim, when viewed in conjunction with Plaintiff's records from the insured period. (*See* R. 668–72, 714–21.)  In fact, Dr. Deans records from 2013 to 2014 reflect that Plaintiff had challenges, but also show Plaintiff's improvement with treatment. (R. 578–86, 596–620.)

Therefore, the court appropriately accorded Dr. Deans' later opinions little significance in finding that Plaintiff did not meet or medically equal the criteria of Listing 12.04.

Second, Plaintiff argues that ALJ Russak erroneously determined that Plaintiff can perform medium work with limitations and did not give the VE an accurate portrayal of Plaintiff's impairments. (D.E. 11 at 25.) Plaintiff specifically asserts that the ALJ failed to give a sufficient narrative assessment of Plaintiff's RFC, per Social Security Ruling 96-8p. (D.E. 11 at 25–26.) Additionally, Plaintiff contends that the evidence did not support the court's conclusion that Plaintiff could perform work activity at the medium exertion level.

Social Security Rule ("SSR") 96-8p requires that "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Additionally, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 98p.

In assessing Plaintiff's RFC, ALJ Russak discussed in detail Plaintiff's medical records and found that he can perform medium work with specific limitations. (R. 50–51.) The ALJ determined that Plaintiff was restricted to working without moving machinery; avoiding certain environmental exposure; performing simple, routine tasks; working in a low-stress position with occasional judgment requirements; avoiding public interaction; and having occasional co-worker interaction, inter alia. (R. 50–51.) The hypothetical that VE Szollosy considered factored in those limitations. (117-23.) A "vocational expert's testimony concerning a claimant's ability to perform

14

alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citing *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982)).   Here, the ALJ's hypothetical appropriately encapsulated Plaintiff's abilities and limitations, and in response the VE identified multiple positions Plaintiff would be able to perform, including several light-exertion positions and several medium-exertion positions. (R. 117–23.)  The ALJ's assessment, therefore, is supported by substantial evidence.

Plaintiff also argues that the occupations identified by the VE conflict with the job descriptions in the Dictionary of Occupational Titles ("DOT").  (*See* D.E. 11 at 28–32.) Specifically, Plaintiff argues that the occupations marker, hand packager, and laundry laborer involve exposure to moving machinery, more than occasional interactions with co-workers, or strict production requirements, each of which would preclude Plaintiff's successful performance of such jobs.  (*Id.* at 28–31.)  However, "[t]he DOT lists *maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  SSR 00–4p (emphasis added).  The VE accounted for Plaintiff's limitations and opined that Plaintiff could perform these positions, per the DOT descriptions.  (R. 116–23.)  Thus, given the absence of conflict between the VE's assessment and the job descriptions in the DOT, the court's reliance on the VE's testimony is consistent and supported.  Incidentally, the VE delineated three light work occupations Plaintiff could perform—a packer, an inserter, or a produce weigher, which likewise renders remand unnecessary because those jobs are also available in significant numbers in the national economy.  (*See id.*)

In sum, the ALJ's decision is supported by substantial evidence.  This Court will therefore affirm.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, this Court finds that ALJ Russak's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties

16